# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

ERIC THOMAS HALL,

     Plaintiff,

                                                    Case No. 3:23-cv-929-TJC-LLL

v.

SCOTTY RHODEN, in his capacity
as Sheriff of Baker County,
ANDREW PAUL THAMES, and
JASON REEDER,

     Defendants.

---

# O R D E R

## I.    INTRODUCTION

This case is before the Court on the pending motions for summary judgment, motion for sanctions, and motion to withdraw admissions. Plaintiff Eric Hall has been derelict in responding to summary judgment in that he took no discovery, failed to timely respond to discovery without justification, and provides no cites to the record in his brief summary judgment response. Nevertheless, the Court has given him every benefit of the doubt, but ultimately concludes that summary judgment against Hall is proper.

## II.    BACKGROUND[1]

On May 8, 2021, a fire broke out on the property adjacent to Hall's residence in Macclenny, Florida. Hall used a garden hose to spray water to keep the fire from spreading. Defendant Andrew Paul Thames, a Baker County Sheriff's Office deputy sheriff, responded to a dispatched call of the fire, arrived at the location, and directed Hall to release the hose (and per Thames, step away from the fire). Hall refused to follow Thames's orders because he believed he was lawfully exercising his constitutional right to protect his property from the fire. Thames then used force to restrain Hall. Both individuals fell to the ground during this altercation. Defendant Jason Reeder, another deputy sheriff, arrived on the scene, and at Thames's direction, discharged his Taser to subdue Hall. Hall was then transported to the Baker County Detention Center; state law charges against Hall were brought and dropped.

Hall filed this lawsuit in state court for damages sustained during the altercation and while detained, alleging state and federal law violations.

---

[1] The court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party" and "resolve all reasonable doubts about the facts in favor of the non-movant." Stewart v. Booker T. Washington Ins., 232 F.3d 844, 848 (11th Cir. 2000) (quoting Stewart v. Happy Herman's Cheshire Bridge, Inc., 117 F.3d 1278, 1285 (11th Cir.1997) and United of Omaha Life Ins. v. Sun Life Ins. Co., 894 F.2d 1555, 1558 (11th Cir.1990)).

(Doc. 4).[2] Defendants removed the case to federal court. (Doc. 1). Defendants answered the complaint (Docs. 11–13) and filed a motion to dismiss for failure to state a claim. (Doc. 14). Hall responded to the motion to dismiss. (Doc. 21). Defendants filed a notice of and motions for summary judgment (Docs. 22–25), Hall filed his response (Doc. 30), and Defendants replied (Doc. 34). The Court decided to carry the motion to dismiss forward and address it in conjunction with the motions for summary judgment. (Doc. 28).

As evidence to support the motions for summary judgment, Defendants filed: declarations from Thames, Reeder, and Defendants' counsel (Docs. 22-1–22-3), the information with Hall's state law charges (Doc. 22-4 at 1–2), the arrest report from the altercation between Hall, Thames, and Reeder (Doc. 22-4 at 3–6), the witness statement of Lieutenant Trevor Bedell (Doc. 22-4 at 7), Hall's citizen complaint form filed with the Baker County Sheriff's Office (Doc. 22-5), Hall's recorded sworn interview (Doc. 22-6), Thames' first requests for admission to Hall (Doc. 22-7) and Reeder's Taser data report, which included information of the Taser's use on the date of the altercation with Hall (Docs. 34-1 and 34-2).

Not submitted as evidence, but part of discovery, Defendants also served three sets of interrogatories, a request for production, and requests for

---

[2] Thames and Reeder are sued in their individual and official capacities. Rhoden is sued only in his official capacity.

admission (Doc. 33 at 2) to which Hall failed to timely respond. This caused Defendants to move for sanctions (Doc. 33) and to ask that their requests for admission be deemed admitted.

The Court held a hearing on the motions for summary judgment, the record of which is incorporated by reference. (Doc. 36). There, Plaintiff expressed frustrations with his counsel but agreed to be represented by his lawyer during the hearing. Hall's counsel acknowledged the untimely discovery responses, and the Court permitted the parties to brief the possibility of relief from admissions for the late responses. (Docs. 38, 40). After the hearing, the Court directed Hall's lawyer to either file a motion to withdraw as counsel or a notice of continued representation. (Doc. 37). Hall's counsel did neither, but did file a motion to withdraw admissions (Doc. 38). Thus, Hall's counsel still represents him.

## III.    DISCOVERY VIOLATIONS AND MOTION FOR SANCTIONS[3]

Hall had no justification for his months-long delay in responding to discovery. Nor has Hall provided a basis to withdraw the damaging admissions he made by failing to timely respond to Defendants' requests for admission.

---

[3] A video containing part of the interaction between Hall, Thames, and Reeder was filed (perhaps inadvertently) with the motion for sanctions. However, that video was not considered as part of the record or in the Court's summary judgment analysis. However, even if the Court had considered the video in its assessment, the video's contents would not alter the Court's conclusion as to summary judgment.

However, because the Court has determined, without regard to Hall's discovery violations, that summary judgment is due to be granted on the merits, the Court will not further address the discovery violations.

## IV.    MOTION TO DISMISS

### Count III: Violation of Hall's Constitutional Rights (Thames and Reeder) and Count IV: Unlawful Seizure (Thames)

Hall has consented to the dismissal of Counts III and IV as duplicative. (Doc. 21 ¶ 14; Doc. 30 at 6). Therefore, Counts III and IV are due to be dismissed with prejudice.

## V.    MOTIONS FOR SUMMARY JUDGMENT

A court must grant summary judgment if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). To show the absence of a genuine dispute of material fact, a movant must cite to materials in the record or show that an adverse party cannot produce admissible evidence to support a fact. Fed. R. Civ. P. 56(c). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). To defeat a properly supported motion, the nonmoving party must produce its own evidence to "designate specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (internal quotation marks omitted).

When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. See Porter v. Ray, 461 F.3d 1315, 1320 (11th Cir. 2006). "[C]onclusory allegations without specific supporting facts have no probative value." Evers v. Gen. Motors Corp., 770 F.2d 984, 986 (11th Cir. 1985) (citations omitted).

## A.    Federal Claims

Plaintiff's federal claims are brought under 42 U.S.C. section 1983, which states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

To successfully bring a section 1983 claim, a plaintiff must (1) "allege the violation of a right secured by the Constitution and laws of the United States" and (2) "show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).

## Count V: Unlawful Arrest (Thames and Reeder)

Hall alleges that his arrest and detention were an unlawful restriction of his liberty in violation of the Fourteenth Amendment. (Doc. 4 ¶ 117).

6

Defendants argue that Thames and Reeder had probable cause to arrest Hall, and Hall's claims asserting section 1983 claims for any unlawful arrest or seizure should be dismissed. (Doc. 23 at 8–11; Doc. 24 at 8–11). Hall does not provide a response. <u>See</u> (Doc. 30; Doc. 34 at 4).

"In opposing a motion for summary judgment, a party may not rely on his pleadings to avoid judgment against him." <u>Resol. Tr. Corp. v. Dunmar Corp.</u>, 43 F.3d 587, 599 (11th Cir. 1995) (citation and internal quotation marks omitted). "There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." <u>Id.</u> (citation omitted). Instead, "the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned." <u>Id.</u> (citations omitted).

In <u>Clark v. City of Atlanta</u>, 544 F. App'x 848, 855 (11th Cir. 2013),[4] the Eleventh Circuit affirmed the district court's ruling that plaintiffs abandoned certain claims that were not addressed in the response to a motion for summary judgment. The district court properly treated as abandoned claims "which were alleged in the complaint, but not addressed in opposition to the motion for summary judgment." <u>Id.</u> For the same reasons, Hall has abandoned his

---

[4] The Court does not rely on unpublished opinions as binding precedent, however, they may be cited when the Court finds them persuasive on a particular point. <u>See</u> <u>McNamara v. GEICO</u>, 30 F.4th 1055, 1060–61 (11th Cir. 2022).

unlawful arrest claim, and the motions for summary judgment are due to be granted as to Count V.

### Count VIII: Use of Excessive Force (Thames) and Count IX: Use of Excessive Force (Reeder)

Hall alleges Thames and Reeder violated his Fourth Amendment right to be free from excessive force when (1) Thames allegedly assaulted him when he refused to release the hose, and (2) Reeder allegedly used the Taser three times. (Doc. 4 at 15−17).

Defendants seek summary judgment on Counts VIII and IX based on qualified immunity. In the qualified immunity context, the Court must resolve all issues of material fact in Hall's favor and then answer the legal question of whether Defendants are entitled to qualified immunity under that version of the facts. Case v. Eslinger, 555 F.3d 1317, 1325 (11th Cir. 2009) (citations omitted). Defendants who establish there is no genuine issue of material fact preventing them from being entitled to qualified immunity should be protected under the doctrine at the summary judgment stage. Simmons v. Bradshaw, 879 F.3d 1157, 1163 (11th Cir. 2018).

To be entitled to qualified immunity, a government official must show he was acting within the scope of his discretionary authority at the time of the alleged wrongful acts. Davis v. Waller, 44 F.4th 1305, 1312 (11th Cir. 2022). "[A] government official can prove he acted within the scope of his discretionary

authority by showing 'objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority.'" <u>Rich v. Dollar</u>, 841 F.2d 1558, 1564 (11th Cir. 1988) (quoting <u>Barker v. Norman</u>, 651 F.2d 1107, 1121 (5th Cir. 1981)). The relevant inquiry is "whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties. The scope of immunity should be determined by the relation of the [injury] complained of to the duties entrusted to the officer." <u>Harbert Int'l, Inc. v. James</u>, 157 F.3d 1271, 1282 (11th Cir. 1998) (alteration in original) (quoting <u>In re Allen</u>, 106 F.3d 582, 594 (4th Cir. 1997)) (additional citations omitted).

The facts viewed in the light most favorable to Hall establish that Thames and Reeder's actions were undertaken consistent with the performance of their official duties and were within the scope of their authority as deputy sheriffs. <u>See</u> <u>Wallace v. Dean</u>, 3 So. 3d 1035, 1054 (Fla. 2009) ("the Sheriff has the unquestioned authority to respond to 911 calls within his jurisdiction."); <u>see also</u> § 30.07, Fla. Stat. (deputy sheriffs "have the same power as the sheriff appointing them"). Here, Thames and Reeder were responding to a dispatched call about the structure fire. There can be no doubt their actions to limit any real or perceived threat of safety that Hall posed to himself or others by potentially obstructing the incoming fire personnel's ability to attack the fire,

9

fell within their official duties or their scope of authority. See (Doc. 22-1 at 2−3; Doc. 22-2 at 2).

It then becomes the plaintiff's duty to show defendants violated a constitutional right that was "clearly established." Corbitt v. Vickers, 929 F.3d 1304, 1311 (11th Cir. 2019). The Fourth Amendment's freedom from unreasonable searches and seizures includes the right to be free from excessive force. See Graham v. Connor, 490 U.S. 386, 394–95 (1989). Whether the force used is reasonable turns on "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Thornton v. City of Macon, 132 F.3d 1395, 1400 (11th Cir. 1998) (quoting Graham, 490 U.S. at 396). Courts also "consider the justification for the application of force, the relationship between the justification and the amount of force used, and the extent of any injury inflicted." Richmond v. Badia, 47 F.4th 1172, 1182 (11th Cir. 2022) (citing Saunders v. Duke, 766 F.3d 1262, 1267 (11th Cir. 2014). An officer will be entitled to qualified immunity if his actions were "objectively reasonable"—that is, if a reasonable officer in the same situation would have believed that the force used was not excessive. Thornton, 132 F.3d at 1400 (citing Anderson v. Creighton, 483 U.S. 635 (1987)).

The Court views the circumstances from the perspective "of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight" and allows for the fact that officers are often required to make "split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Plumhoff v. Rickard, 572 U.S. 765, 775 (2014) (quoting Graham, 490 U.S. at 396–97). The facts, however, are viewed in the light most favorable to the plaintiff. Tolan v. Cotton, 572 U.S. 650, 655–56 (2014).

It is undisputed that Thames attempted to detain Hall after Hall refused to comply with Thames's orders to release the hose and step away from the surrounding fire. See Thames' declaration (Doc. 22-1 at 2–3); see also witness statement by Lieutenant Bedell (Doc. 22-4 at 7) ("CPL Andrew [T]hames asked the subj[ect] to back away from the fire, and the subj[ect] didn't comply."). The facts, even viewed in the light most favorable to Hall, support an objectively reasonable belief that Thames could use the amount of force he did, especially given Hall's resistance. As a matter of law, Thames's use of force was not unreasonable under the circumstances.

The same is true as it relates to the excessive force claim against Reeder for the Taser use. Defendants argue the Taser was used only to subdue Hall after he refused to comply with Thames' orders and "is an effort to cease [Hall's] combative behavior." (Doc. 22-2 at 2).

11

The only dispute with Hall's excessive force claim as to Reeder is how many times the Taser was discharged. Hall alleged the Taser was discharged "not once, not twice, but three times." (Doc. 4 ¶¶ 153−54; Doc. 30 at 2, 7−8). However, the record reflects that Reeder pulled his Taser and yelled "taser" three times before deploying his Taser on Hall. See witness statement by Lieutenant Bedell (Doc. 22-4). Thames' and Reeder's motions and declarations state the Taser was deployed only once during the time of the incident. This is confirmed by the Taser report. (Doc. 34-2 at 12). [5]

Drawing all inferences in favor of Hall, Thames and Reeder acted in an objectively reasonable manner under the circumstances, and their responses were not disproportionate to the circumstances. Thus, they did not violate Hall's Fourth Amendment right to be free from the excessive use of force.

Even if these attempts to detain Hall constituted a violation of the Fourth Amendment, Thames and Reeder are entitled to qualified immunity because Hall failed to show that Thames and Reeder violated a constitutional right that was "clearly established" at the time of the conduct. Plumhoff, 572 U.S. at 778. Official conduct violates clearly established law if the "contours of [a] right [are]

---

[5] As part of the reply to the motions for summary judgment, Defendants included an affidavit from John Blanchard, the Director of Emergency Management at Baker County Sheriff's Office. (Doc. 34-1). The Taser data reflects an approximately twenty-eight-minute discrepancy due to a time sync issue in which Reeder's Taser was running faster than a reference clock, which is called a "clock drift." Id. at 2−3. This does not affect the Court's conclusion.

sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right." Ashcroft v. al–Kidd, 563 U.S. 731, 741 (2011) (alteration in original) (internal quotations omitted). Because Fourth Amendment qualified-immunity determinations turn on the reasonableness of an officer's acts in a certain set of facts, the determination of whether a legal right was already clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." Mullenix v. Luna, 577 U.S. 7, 11 (2015) (citations omitted).

Hall does not provide, nor could this Court find, any binding cases which clearly established a Fourth Amendment violation in these circumstances, Indeed, there are similar cases which indicate the opposite. See Buckley v. Haddock, 292 F. App'x 791, 798 (11th Cir. 2008) (holding that an officer's use of a taser three times was not excessive force when the handcuffed plaintiff sat on the ground with his legs crossed and refused to walk to the police car); see also Hembree v. Rojas, Case No. 2:22-cv-562-SPC-NPM, 2024 WL 2187331 at *2 (M.D. Fla. May 15, 2024) (plaintiff admitted he "was not cooperating" with the defendant's orders, which weighs in favor of qualified immunity). The Fourth Amendment right was not clearly established in the specific context of this case. Therefore, Thames and Reeder are entitled to qualified immunity as to Counts VIII and IX.

## Count XII: Vicarious Liability (Rhoden in his official capacity)

Hall sues Rhoden in his official capacity under a vicarious liability theory. (Doc. 4 ¶ 183). Hall alleges that Rhoden "direct[ed] and manage[d] policing functions . . . where Thames and Reeder acted at all times relevant" to this action, and thus Rhoden is liable for Thames' and Reeder's alleged wrongful conduct. Id. ¶¶ 184, 186.

Rhoden noted that "[i]t is entirely unclear whether this Count is aimed at [Hall's] state law claims or his claims under section 1983 since it appears to incorporate both." (Doc. 25 at 6). However, Rhoden is correct that (a) vicarious liability cannot serve as a basis for liability under section 1983, and (b) where an officer is sued in his official capacity under section 1983, the suit is proceeding against the entity the officer represents. (Doc. 25 at 7–8); see Hafer v. Melo, 502 U.S. 21, 25 (1991) ("[O]fficial-capacity suits 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting Kentucky v. Graham, 473 U.S. 159, 165 (1985)); see also Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., 402 F.3d 1092, 1115 (11th Cir. 2005). Accordingly, Hall's claim against Rhoden in his official capacity as Sheriff of Baker County is a claim against the Sheriff's Office.

A county or municipality may be liable in a section 1983 action "only where the municipality itself causes the constitutional violation at issue."

14

Cook, 402 F.3d at 1115 (citations omitted). Thus, a plaintiff must establish that an official policy or custom of the municipality was the "moving force" behind the alleged constitutional deprivation.    See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 693-94 (1978). Here, Hall has not even attempted to identify any policy or custom maintained by Sheriff Rhoden. Therefore, to the extent Count XII is based upon section 1983, the Court rejects it and summary judgment against Hall is appropriate.

Alternatively, although section 768.28, Florida Statutes attaches liability to Rhoden, in his official capacity, for the alleged tortious acts of his deputies committed within the course and scope of their employment, summary judgment is appropriate here. As discussed below, Hall has failed to demonstrate any genuine dispute that Thames or Reeder committed tortious acts within their scope of employment. Hall therefore also fails to show how Rhoden has any liability for Thames's or Reeder's actions. Thus, the motion for summary judgment is due to be granted as to Count XII.

## B.    State Law Claims

Hall contends Defendants violated state law and brings six different state law claims: negligent hiring, negligent training, battery, assault, and intentional infliction of emotional distress.

An officer cannot be held personally liable for acts committed in "the scope of her or his employment or function" unless he "acted in bad faith or with

malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." § 768.28 (9)(a), Fla. Stat. Bad faith is defined as actual malice, and willful and wanton conduct that is "worse than gross negligence . . . and more reprehensible and unacceptable than mere intentional conduct." Kastritis v. City of Daytona Beach Shores, 835 F. Supp. 2d 1200, 1225 (M.D. Fla. 2011) (citations and quotation omitted).

An officer acts within the scope of his employment if "(a) it is the type of conduct which the employee is hired to perform, (b) it occurs substantially within the time and space limits authorized or required by the work to be performed, [and] (c) the conduct is activated at least in part by a purpose to serve the employer." Craft v. John Sirounis and Sons, Inc., 575 So.2d 795, 796 (Fla. 4th DCA 1991). Hall does not contest that Defendants were acting in the scope of their employment during the altercation. Moreover, "a plaintiff's threadbare recital that a defendant 'acted maliciously and in bad faith is conclusory' and insufficient to pierce an officer's immunity." Bowman v. Hunter, No. 3:22-cv-545-MMH-MCR, 2024 WL 1299280, at *7 (M.D. Fla. March 17, 2023) (quoting Brivik v. Law, 545 F. App'x 804, 807 (11th Cir. 2013)).

Here, Hall alleges that "Thames . . . unilaterally attacked Plaintiff" and that "Reeder's conduct was outrageous . . . [and] beyond all bounds of decency . . . ." (Doc. 4 ¶¶ 14, 178). But, these conclusory allegations are insufficient; and Hall has identified no facts to pierce the sovereign immunity conferred on

Thames or Reeder. Thus, they are protected by Florida sovereign immunity. However, even if the Court did not find that sovereign immunity applies, summary judgment is still appropriate as to Thames and Reeder for the remaining state law claims against them.

### Count I: Negligent Hiring and Count II: Negligent Training and Supervision (Rhoden in his official capacity)

Hall alleges that Rhoden negligently hired, trained, and supervised Thames as a Deputy Sheriff, that this negligent hiring is "operational, and not discretionary," and thus "not barred by the [d]octrine of [s]overeign [i]mmunity." (Doc. 4 ¶¶ 45–79). Rhoden counters that these claims are barred by sovereign immunity. (Doc. 25 at 5–6).

Governmental entities are immune from tort liability based on actions that involve discretionary functions under Florida law, such as hiring and training employees. Hammer v. Lee Mem'l. Health Sys., No. 2:18-cv-347-PAM-MRM, 2020 WL 999775, at *3 (M.D. Fla. March 2, 2020) ("Hiring is a discretionary function, and a government entity is 'immune from tort liability based on actions that involve its discretionary functions.'") (quoting Cook v. Sheriff of Monroe Ctny., 402 F.3d 1092, 1117 (11th Cir. 2005)); Gualtieri v. Bogle, 343 So. 3d 1267, 1276 (Fla. 2d DCA 2022) ("the 'decision regarding how to train [law enforcement] officers and what subject matter to include in the training is clearly an exercise of governmental discretion regarding

fundamental questions of policy and planning.'") (quoting <u>Lewis v. City of St. Petersburg</u>, 260 F.3d 1260, 1266 (11th Cir. 2001). Even apart from these legal principles, Hall has put forward no evidence to support these claims. Therefore, Rhoden's motion for summary judgment is due to be granted as to Counts I and II.

### Count VI: Battery and Count VII: Assault (Thames)

Hall also brings state law claims for battery and assault against Deputy Thames for making offensive and unwanted contact with Hall. Thames contends that he is entitled to summary judgment because the amount of force during the arrest was ordinary and reasonable. (Doc. 23 at 16−17). In response, Hall states that "[p]lainly, Thames committed a battery upon Plaintiff on May 8, 2021" and that "Thames assaulted Plaintiff on May 8, 2021, after issuing a threat to harm" him. (Doc. 30 ¶¶ 48–49).

Florida law defines an assault as "an intentional, unlawful offer of corporal injury to another by force, or exertion of force directed toward another under such circumstances as to create a reasonable fear of imminent peril." <u>Sullivan v. Atl. Fed. Sav. & Loan Ass'n</u>, 454 So.2d 52, 54 (Fla. 4th DCA 1984). A battery is defined as "the intentional infliction of a harmful or offensive contact upon the person of another." <u>Id.</u>

Police officers, however, receive a presumption of good faith in Florida. <u>See</u> <u>Ermini v. Scott</u>, 249 F. Supp. 3d 1253, 1276 (M.D. Fla. 2017). Officers are

only liable where the force used is "clearly excessive." <u>Davis v. Williams</u>, 451 F.3d 759, 768 (11th Cir. 2006) (citing <u>City of Miami v. Sanders</u>, 672 So.2d 46, 47 (Fla. 3d DCA 1996)); <u>see</u> <u>City of Miami v. Albro</u>, 120 So.2d 23, 26 (Fla. 3d DCA 1960) ("The limit of the force to be used by the police is set at the exercise of such force as reasonably appears necessary to carry out the duties imposed upon the officers by the public."); <u>see also</u> <u>Pena v. Marcus</u>, 715 F. App'x 981, 988 (11th Cir. 2017) ("To determine whether an officer's actions are an assault and battery, courts inquire whether the officer's use of force was reasonable.") (applying Florida law) (citations omitted).

As a matter of law, the amount of force Thames used was reasonable under the circumstances. Thames directed Hall to release the hose, and Thames used force to restrain Hall after Hall refused to follow Thames's commands. His use of force during the arrest was reasonable and does not give rise to either an assault or battery claim under Florida law. <u>See, e.g.</u>, <u>Baxter v. Roberts</u>, 54 F.4th 1241, 1273 (11th Cir. 2022) (deputy's use of brief and restrained force in grabbing the plaintiff, forcing him to the ground, and pulling his arm up was necessary to subdue a resisting suspect). There is no genuine dispute of material fact about whether Thames committed battery or assault. Thus, Thames is entitled to summary judgment on Counts VI and VII.

### Count X: Intentional Infliction of Severe Emotional Distress (Thames) and Count XI: Intentional Infliction of Severe Emotional Distress (Reeder)

Hall alleges Thames's and Reeder's conduct amounted to intentional infliction of emotional distress (IIED). Thames and Reeder seek summary judgment because Hall's allegations fail to meet the state law threshold to impose liability. Hall responds that Thames and Reeder, joined together to assault him, and while doing so, employed excessive force.

Under Florida law, a plaintiff must show that the defendant's intentional conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Metro. Life Ins. Co. v. McCarson, 467 So. 2d 277, 278–79 (Fla. 1985). Even tortious or criminal intent, or intent to inflict emotional distress, standing alone, is not enough. See id. at 279. The conduct must be evaluated on an objective basis; the plaintiff's subjective response to the conduct does not control. Whether the alleged conduct satisfies this high standard is a legal question "for the court to decide as a matter of law." Vance v. S. Bell Tel. & Tel. Co., 983 F.2d 1573, 1575 n.7 (11th Cir. 1993) (quoting Baker v. Fla. Nat'l Bank, 559 So. 2d 284, 287 (Fla. 4th DCA 1990)). In situations involving government authority, courts "are . . . required to give greater weight to the fact that the defendants had actual or apparent

authority over [a plaintiff] as police officers." <u>Gallogly v. Rodriguez</u>, 970 So. 2d 470, 472 (Fla. 2d DCA 2007).

Here, viewing the facts in favor of Hall, the Court finds as a matter of law that Thames' and Reeder's conduct was not so outrageous, atrocious, or utterly intolerable as to constitute IIED. As discussed above, both Thames' and Reeder's actions were objectively reasonable in light of the circumstances at the time. Thus, summary judgment as to Counts X and XI is due to be granted.

## VI.    CONCLUSION

Accordingly, it is hereby

**ORDERED:**

1.    Defendants' Motion to Dismiss (Doc. 14) is **GRANTED in part**. Counts III and IV are **DISMISSED with prejudice**.

2.    Defendants' Motions for Summary Judgment (Docs. 23, 24, and 25) are **GRANTED** as to Counts I, II, V, VI, VII, VIII, IX, X, XI, and XII.

3.    Defendants' Motion for Sanctions (Doc. 33) and Plaintiff's Motion for Relief from Technical Admissions (Doc. 38) are **MOOT**.

4.    The Clerk should enter judgment in favor of Defendants Scotty Rhoden, Andrew Paul Thames, and Jason Reeder, and against Plaintiff Eric Hall and close the file.

**DONE AND ORDERED** in Jacksonville, Florida, the 27th day of May, 2025.



TIMOTHY J. CORRIGAN
Senior United States District Judge

jcd
Copies:

Counsel of record